Case 21-636, Document 83, 09/22/2022, 3387110, Page1 of 5



RISK MANAGEMENT

# Gun issue is a lose-lose for banks (whatever their stance)

By Neil Haggerty April 26, 2018, 1:11 p.m. EDT 7 Min Read



WASHINGTON — How banks come down on the politically divisive issue of gun sales is increasingly a case of damned if you do, damned if you don't.

While Citigroup and Bank of America face GOP heat over their restricting services to firearms sellers and manufacturers — criticism that could affect the outcome of regulatory relief negotiations — bankers in New York State now face the potential of regulatory blowback if they don't crack down on gun promoters under new Department of Financial Services guidance.

"One of the problems with any issue like this in today's world, you are going to have people agree with you and disagree with you, often passionately, from both sides," said Chip MacDonald, a financial services lawyer at Jones Day. "The banks ought to be able to make reasonable decisions consistent with law on how their brand is used and who they do business with."



To some observers, the issue of gun violence — amplified by mass shootings like that in Parkland, Fla., in February — is hard for banks to ignore. Their public stance could affect customer perceptions and regulators may take notice of the reputational risk.

"Banks increasingly must consider political issues as part of their risk management decision-making process," said Rolland Johannsen, a senior consulting associate at Capital Performance Group. "This requires new processes and more proactive and broader considerations of reputation risk as part of risk models and calculations."

But regulatory pressure on banks to act is also drawing criticism, with bankers and other industry observers questioning the move by the NYDFS.

TRENDING

Best Credit Unions to Work For 2022

The 70 institutions on this year's list create a great work environment by offering robust benefits, recognizing a job well done and providing clear communication from the C-suite.

How student loan forgiveness will ripple across financial services

From consumer credit to deposits to inflation, President Biden's move to excuse up to $20,000 in student debt per eligible borrower will have ramifications throughout the banking sector.

A showdown is coming over who is liable for P2P payments fraud

The Consumer Financial Protection Bureau is expected to issue guidance soon around fraud liability on digital payment platforms, and the thorniest question concerns who pays for customers' mistakes.

AMERICAN BANKER DAILY BRIEFING

Big ideas and must-read stories delivered to your inbox every weekday morning.

Enter email address

JOIN FREE

Before your sign up, please read terms of use and privacy policy.

Cited in National Rifle Association of America v. Maria T. Vullo, no. 21-636-cv, archived on 9/22/2022
This document is protected by copyright. Further reproduction is prohibited without permission.

The guidance appeared somewhat benign, calling on state-chartered banks and other financial services firms to rethink ties they have with the National Rifle Association and other firearms-industry groups in the wake of the mass shootings. The regulator encouraged banks to weigh reputational risk and other corporate responsibility factors in assessing their relationships.

ADVERTISING



But bankers say such regulatory guidelines are frustratingly vague, and can effectively compel institutions to cease catering to legal businesses.

One community banker from Upstate New York, who spoke on the condition of anonymity, said the guidance "felt somewhat politically motivated."

"If a business is a legal entity, how do I know who is going to come in disfavor with either the New York State DFS or a federal regulator, that may say, 'Reputationally, you shouldn't be doing business with this company'?" the banker said. "It's hard to know what the rules are if I don't know what the rules are."

Brian Knight, a senior fellow at George Mason University's Mercatus Center, wrote on his blog that the guidance could be seen as a "thinly veiled threat" since it does not rule out the possibility of a regulatory response for maintaining ties to the NRA.

"If the NYDFS had no intention of threatening regulatory sanctions, they could clearly have added language taking the threat of enforcement off of the table," he said.

Knight noted similarities between the NYDFS letter and Operation Choke Point, the Department of Justice initiative in which authorities sought to crack down on fraud by obstructing access to the banking system for companies in legal industries.

"However, the NYDFS action is more troubling than Choke Point. Unlike Operation Choke Point, which dealt with commercial entities where there was at least a possibility of actual fraud, ... [that] is not the case here," Knight wrote. "The NYDFS order appears to be *inherently* about political speech. After all, there is no allegation that the NRA is committing fraud against its members."

Yet restricting loans and other services to firearms-related businesses, whether triggered by regulatory pressure or not, can alternatively incur the wrath of policymakers on the other side of the guns debate.

Republican senators have criticized both the moves by Citi and Bank of America. The former banned retailers that use the bank from offering bump stocks and selling guns to underage customers or those who have not passed background checks. The latter then came out with its own set of restrictions, ending loans to companies that manufacture assault-style weapons used for nonmilitary purposes.

Cited in National Rifle Association of America v. Maria T. Vullo, No. 21-636-cv, archived on 9/22/2022
This document is protected by copyright. Further reproduction is prohibited without permission.

Published reports Wednesday said BofA's policy came after dozens of employees lost family members or suffered other trauma related to mass shootings in the past few years. Speaking at the bank's annual meeting Wednesday, CEO Brian Moynihan was quoted as saying, "This comes from our teammates saying we have to help."

But in letters to both Citi and BofA, Senate Banking Committee Chairman Mike Crapo, R-Idaho, criticized the two banks, which he noted get government support, for passing judgment on legal businesses. He also raised concerns about the prospect of banks using personally identifiable information to monitor credit and debit transactions with respect to firearms purchases.

"It is deeply concerning to me when large national banks like Bank of America, which receive significant forms of government support and benefits, use their market power to manage social policy by withholding access to credit to customers and companies they disfavor," Crapo said in a letter Wednesday to Moynihan.

A spokesperson for Citi defended the bank's new policy, saying the decision was not based on political ideology.

"As we have with other industries that have reputational implications, we created standards based not on ideology, but on established best sales practices, which most of the businesses we work with currently follow," the spokesperson said. "This policy does not impact the ability of Citi customers to use their credit and debit cards for the legal purchase of firearms."

Now, the issue is seeping into congressional deliberations over a highly anticipated bill to roll back certain provisions of the Dodd-Frank Act.

The Senate recently passed its version of the bank deregulation bill with the support of 16 Democrats and one Independent, but House Republicans have pushed for the final bill to be expanded. The lower chamber has already passed a number of additional proposals, including one to consolidate supervisory authority for the proprietary trading ban — known as the Volcker Rule — with the Federal Reserve.

While Senate Democrats have been the most resistant to additional deregulatory provisions, it is now some Republicans suggesting that banks should not be additionally rewarded as a result of their positions on gun sales.

Sen. John Kennedy, R-La., cited Citi and BofA's announcements to Majority Leader Mitch McConnell in a recent letter opposing the proposed Volcker Rule provision.

"I bring this specific bill to your attention out of serious concern for the direction that America's biggest banks are trending when it comes to the Second Amendment," Kennedy wrote. "I do not believe that Congress should reward big banks for their offensive actions."

Kennedy and other Republican senators said banks should not be cutting off lawful businesses or in general be politically motivated.

"We don't need red banks and blue banks," Kennedy said at a Senate hearing last week. "We need banks that are safe and sound and honest."

Others say the banks' moves are particularly concerning since legal businesses need access to the financial system in order to operate.

"Our financial infrastructure is very dependent on a handful of the nation's largest banks," said a spokesperson for Sen. Pat Toomey, R-Pa. "As a result, Senator Toomey is very concerned by

Cited in National Rifle Association of America v. Maria T. Vullo, no. 21-636-cv, archived on 9/22/2022. This document is protected by copyright. Further reproduction is prohibited without permission.

the decision of some of these banks to deny services to perfectly legal and legitimate businesses."



Knight said it is possible McConnell would choose not to add the House Volcker provision to the Senate bill.

"If the coalition is weakening from the right as well as left then this is a problem," Knight said in an interview. "If you don't bring up a bill in the Senate, you don't bring the risk of breaking up that coalition."

But others point out that the Republican criticism will likely have a limited effect since regulatory relief provisions that go beyond the original Senate bill already had a slim chance of passing for other reasons.

"The changes to the Volcker Rule, getting 60 votes for that is unlikely at this time," said Ed Mills, an analyst with Raymond James. "We got the package of bills that can get 60 votes in the near term already through the Senate. This is a shot across the bow to the banking industry."



**Neil Haggerty** Reporter, American Banker





REPRINT

For reprint and licensing requests for this article, click here.

RISK MANAGEMENT VOLCKER RULE STATE REGULATORS MITCH MCCONNELL ANDREW CUOMO BANK OF AMERICA CITIGROUP SENATE BANKING COMMITTEE HOUSE FINANCIAL SERVICES COMMITTEE WASHINGTON DC NEW YORK

## MORE FROM AMERICAN BANKER

### Challenger bank Stash debuts its own core system



The company hopes its new technology infrastructure will help it scale and quickly roll out new products.

Sep 21, 2022

### Goldman Sachs faces Fed scrutiny of money-losing Marcus consumer unit




For at least several weeks, Federal Reserve officials have been peppering Goldman management with questions and follow-ups in a process that's continuing, people with knowledge of the matter said.

Sep 16, 2022

### Why regulators can't go as far as they'd like to stop Zelle scams



The popular peer-to-peer payments network is rife with fraud. And as much as the Consumer Financial Protection Bureau might want to crack down on the big banks that own Zelle, the agency is legally handcuffed.

Sep 20, 2022

### Are there too many banks?



The number of U.S. banks has dropped by two-thirds since the mid-1980s. Everyone expects this trend to continue for the foreseeable future. But at what point does M&A cool?



Sep 21, 2022

Cited in National Rifle Association of America v. Maria T. Vullo, no. 21-636-cv, archived on 9/22/2022
This document is protected by copyright.
Further reproduction is prohibited without permission.

## White House to nominate permanent FDIC leader, taps two GOP board members

The Biden administration has selected Travis Hill, formerly Jelena McWilliams' policy chief, for the No. 2 spot on the board of the Federal Deposit Insurance Corp.

Sep 20, 2022

## Regulators are coming for fintechs and the banks that power them



Consumers and small business could eventually feel the impact of stepped-up regulatory scrutiny of bank-fintech partnerships.

Sep 16, 2022

## Reaching the invisibles

**Millions of Americans have trouble accessing low-cost credit because they have thin or problematic repayment histories. Recent innovations could change that.**

SUBSCRIBE

FOLLOW US IN REAL TIME

About Us
Contact Us
The Magazine
Banker's Glossary

RSS Feed
Privacy Policy
Subscription Agreement
Content Licensing/Reprints
Advertising/Marketing Services

© 2022 Arizent. All rights reserved.

Cited in National Rifle Association of America v. Maria T. Vullo, no. 21-636-cv, archived on 9/22/2022

This document is protected by copyright. Further reproduction is prohibited without permission.