DALLAS | NEW YORK

# BREWER
ATTORNEYS & COUNSELORS

July 29, 2024

**VIA ECF**

Ms. Catherine O'Hagan Wolfe, Clerk of Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, NY 10007

      Re:    *National Rifle Association of America v. Vullo*, No. 21-636

      Plaintiff National Rifle Association ("NRA") submits this supplemental letter brief addressing the impact of the U.S. Supreme Court's decision in *National Rifle Association v. Vullo* (*Vullo II*), 602 U.S. 175 (2024), on this Court's qualified immunity holding.

      In a unanimous decision, the Supreme Court held its precedents to clearly establish that "[a] government official cannot coerce a private party to punish or suppress disfavored speech on her behalf." *Id*. at 190 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67–69 (1963)). And that, all nine justices concluded, was precisely what defendant Maria Vullo, former Superintendent of the New York Department of Financial Services ("DFS"), was plausibly alleged to have done: to "threaten[] to wield her power against those refusing to aid her campaign to punish the NRA's gun-promotion advocacy." *Id*. at 194.

      The Supreme Court's decision requires this Court to reverse its earlier qualified immunity holding. The same errors the Supreme Court identified in this Court's merits ruling also infected its qualified immunity reasoning. As the Supreme Court explained, this Court erred by considering the complaint's allegations in isolation and failing to adopt all reasonable inferences in the NRA's favor. *Id*. at 194–95.

      There is no dispute that it is clearly established that government officials cannot use their regulatory power to coerce private parties to punish speech with which the officials disagree. This Court did not hold otherwise, *see Nat'l Rifle Ass'n of Am. v. Vullo* (*Vullo I*), 49 F.4th 700, 715 (2d Cir. 2022), but instead concluded that the complaint failed to allege such conduct by Vullo. *Id*. at 717. However, it reached *that* conclusion by failing to consider Vullo's actions in combination, and by drawing reasonable inferences in her favor rather than in the NRA's, as the law clearly requires. As the Supreme Court explained, "The Second Circuit could only reach this conclusion"—that the NRA failed to state a First Amendment claim under *Bantam Books*—"by taking the allegations in isolation and failing to draw reasonable inferences in the NRA's favor in violation of this Court's precedents." *Vullo II*, 602 U.S. at 194–95 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Correcting that error, as the Supreme Court did, leads not only to the conclusion that the complaint pleads a First Amendment violation but also a violation of clearly established law.

1717 Main Street, Suite 5900 • Dallas, Texas 75201 • 214.653.4000 • f: 214.653.1015 • Brewerattorneys.com

Thus, Vullo is not entitled to qualified immunity for three reasons. *First*, the rights Vullo violated were clearly established by *Bantam Books* and the Second Circuit cases applying it. *Second*, the reasoning in the Supreme Court's *Vullo* opinion precludes this Court's qualified immunity determination. *Third*, qualified immunity is especially difficult to establish at the motion to dismiss stage, where, as here, the complaint alleges facts establishing a clear First Amendment violation.

I.  **Vullo Violated Clearly Established Law.**

Qualified immunity does not protect government officials if their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A government official violates "clearly established" law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Vega v. Semple*, 963 F.3d 259, 274 (2d Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Government officials like Vullo are presumed to have fair warning of rights established by "Supreme Court and Second Circuit precedent as it existed at the time of the challenged conduct." *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016).

It is the defendant's burden to establish qualified immunity. *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 268–69 (2d Cir. 1996). Where the defendant raises qualified immunity in a motion to dismiss, she "must face the more stringent standard applicable to this procedural route." *Sabir v. Williams*, 52 F.4th 51, 63 (2d Cir. 2022). The NRA is "entitled to all reasonable inferences from the facts alleged, not only those that support [its] claim, but also those that defeat the immunity defense." *Id.* at 64. Further, "the facts supporting the [qualified immunity] defense must appear on the face of the complaint, or in its attachments and documents incorporated by reference." *Id.* (cleaned up.)

The U.S. Supreme Court rejected a requirement that a previous case be "fundamentally similar" or involve "materially similar facts," explaining that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Thus, qualified immunity can be overcome even if there is not an exact or virtually exact factual similarity to prior acts that have been declared unconstitutional. "A court need not have passed on the identical course of conduct in order for its illegality to be clearly established." *See Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996) (cleaned up). Indeed, "some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082–83 (10th Cir. 2015) (Gorsuch, J.).

In this case, the U.S. Supreme Court unanimously held that precedent that has been the law for more than 60 years dictated the outcome. "Six decades ago, [the Supreme] Court held that a government entity's 'threat of invoking legal sanctions and other means of coercion' against a third party 'to achieve the suppression' of disfavored speech violates the First Amendment." *Vullo II*, 602 U.S. at 180 (citing *Bantam Books*, 372 U.S. at 67). And, the Supreme Court held, the NRA

"plausibly alleges that respondent Maria Vullo did just that." *Id.* at 180. That is, Vullo violated the NRA's First Amendment rights by singling out its associates for regulatory action to suppress and punish the NRA's advocacy, conduct that has been clearly illegal for decades. *Id.*; *see also Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 461 (1958) ("unconstitutional intimidation of the free exercise of the right to advocate" violates the First Amendment).

As Justice Gorsuch put it during oral argument in *Vullo*: "[I]t seems like that we're all in agreement that the law here is clearly established under *Bantam Books*." *See* Tr. of Oral Argument at 64 (Gorsuch, J.). In applying that settled rule to the complaint at issue here, the unanimous Court stressed that it did not "break new ground." *Vullo II*, 602 U.S. at 190. Instead, it "only reaffirm[ed]" *Bantam Books*. *Id.* at 197; *see also id.* at 199 ("Today we reaffirm a well-settled principle . . . 'the critical' question is whether plaintiff has 'plausibly allege[d] conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech.") (Gorsuch, J., concurring); Brief for First Amendment Scholars as Amici Curiae Supporting Petitioner 5 (distinguished First Amendment scholars Floyd Abrams, Genevieve Laker, Michael McConnell, Geoffrey Stone, Nadine Strossen, and Keith Whittington explaining that a court reviewing this complaint "need not break any new ground to decide the question presented").

And the Supreme Court made clear that the analogy to *Bantam Books* is straightforward. Applying that case's decades-old rule to the NRA's complaint, the Supreme Court found unanimously that the NRA plausibly alleged a violation because Vullo's authority was "[j]ust like [that of] the commission in *Bantam Books*" in certain ways and "much more than that" in others. *Vullo II*, 602 U.S. at 192. It also concluded that her message to regulated entities—that they must cut ties with the NRA or face the consequences—was "loud and clear," *id.*, and repeatedly "reaffirmed" by Vullo and Cuomo, *id.* at 193, *see also id.* at 195 (referring to Vullo's "not-so-subtle, sanctions-backed threat"). Indeed, the illegality of Vullo's "ham-handed" conduct was glaring. *See* Tr. of Oral Argument at 44, 46 (Alito, J.).

The Supreme Court also focused on Vullo's alleged threat to Lloyd's that if it did not join her campaign against the NRA, she would enforce New York insurance law against it for violations unrelated to the NRA—but that if Lloyd's did cut ties with the NRA—it would be spared. *Vullo II*, 602 U.S. at 193. As the Court's unanimous analysis makes clear, no reasonable public official could believe that she had the right to use her power to enforce insurance law in this way—to compel a business to blacklist an advocacy organization because she disapproved of the organization's political views. *Id.* at 194. The Court stated, "the complaint, assessed as a whole, plausibly alleges that Vullo threatened to wield her power against those refusing to aid her campaign to punish the NRA's gun-promotion advocacy." *Id.* This Court, however, concluded otherwise not by disputing that clearly established premise, but, as the Supreme Court noted, by

failing to adhere to the black-letter rule that it adopt all reasonable inferences in favor of plaintiff at the motion to dismiss stage. *Id*. at 194–95.[1]

Further, the Supreme Court dismissed Vullo's attempts to distinguish *Bantam Books* on the basis that Vullo's "challenged actions in fact targeted business practices and relationships." *Id*. at 196. That Vullo "'regulate[d]' business activities stemming from the NRA's 'relationships with insurers and banks' does not change the allegations that her actions were aimed at punishing or suppressing speech." *Id.* (internal citation omitted).

Instead, the Court explained that the result here flowed from *Bantam Books*. In that case, "the commission interfered with the business relationship between the distributor and the publishers in order to suppress the publishers' disfavored speech." *Id.* The Court also pointed to the Seventh Circuit's decision in *Backpage.com*, in which "a sheriff interfered with a website's business relationships with payments-service providers in order to eliminate the website's 'adult section' (if not the website itself)" to explain how the NRA clearly pleaded a First Amendment violation under *Bantam Books*. *Id.* at 197 (citations omitted).

That was so even if some of the insurance policies at issue violated the state law. The Supreme Court in *Vullo* noted that "nothing in" *Bantam Books* "turned on the distributor's compliance with state law. On the contrary, *Bantam Books* held that the commission violated the First Amendment by invoking legal sanctions to suppress disfavored publications, some of which may or may not contain protected speech (i.e., nonobscene material)." *Id*. at 196.

Critically, the Supreme Court concluded that this Court "could only reach th[e opposite] conclusion"—that the NRA's claim failed under the *Bantam Books* rule—"by taking the allegations in isolation and failing to draw reasonable inferences in the NRA's favor in violation of th[e Supreme] Court's precedents." *Id.* at 194–95. Although "discovery in this case might show that the allegations of coercion are false, or that certain actions should be understood differently in light of newly disclosed evidence," this Court "erred" in its reading of the complaint at this stage. *Id.*

---

[1] Qualified immunity does not protect "those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Fairly read, the NRA's Second Amended Complaint alleges that Vullo and her boss, then-Governor Andrew Cuomo, knowingly violated the First Amendment by intentionally targeting the NRA with the intent of abridging its First Amendment rights. For example, NRA plausibly alleged that Vullo and Cuomo "selectively targeted the NRA because of the NRA's constitutionally protected legislative and grassroots advocacy activities" and "specifically intend to undermine the NRA's ability to conduct its affairs in New York—and to advance Cuomo's anti-NRA political agenda." A-151 at ¶ 37. Such pre-meditated and deliberate conduct that is specifically targeted at First Amendment rights is not shielded by qualified immunity. *Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 867 (8th Cir. 2021).

In other words, when the complaint is properly construed as a whole, adopting all reasonable inferences in the NRA's favor, there is only one possible conclusion: the Second Amended Complaint states a violation of the First Amendment under clearly established law. That conclusion requires reversal not only of this Court's merits determination, but of its qualified immunity holding as well.

Indeed, until this panel's previous ruling, Second Circuit precedent was equally clear that Vullo's attempt to use her regulatory power to blacklist the NRA because of its protected speech was forbidden by the First Amendment. Prior Second Circuit case law clearly established that "a public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form." *Okwedy* v. *Molinari*, 333 F.3d 339, 344 (2d Cir. 2003); *see also Vullo II*, 602 U.S. at 190 (citing *Okwedy* with approval); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). Both cases clearly established that Vullo's conduct violated the law.

In *Okwedy*, the Second Circuit considered a letter from Staten Island's Borough President, Guy Molinari. Molinari sought to "establish a dialogue" with a company that placed "unnecessarily confrontational and offensive" billboards. *Okwedy*, 333 F.3d at 341. Although Molinari lacked any regulatory over the company, he appealed to it "as a responsible member of the business community to please contact" his "legal counsel and Chair of my Anti-Bias Task Force to discuss further the issues I have raised in this letter." *Id*. at 342–43 (cleaned up).

Finding that the complaint stated a First Amendment violation, the Second Circuit rejected the district court's analysis "that Molinari's letter is not reasonably susceptible to interpretation as threatening economic harm, and that because the letter called for a dialogue it is not the type of inquiry that could reasonably be viewed as designed to intimidate." *Id*. at 344 (cleaned up). To the contrary, this Court found that Molinari's invocation of his official title, his reference to the "economic benefits" that the billboard company derived from its Staten Island business, and his urging that the billboard company contact his "legal counsel and Chair of [his] Anti-Bias Task Force" presented sufficient evidence of "an implicit threat of retaliation if" the billboard company "failed to accede to Molinari's requests" to state a cause of action under *Bantam Books*. *Id*.

The facts of this case—involving a powerful regulator making a "not-so-subtle, sanctions-backed threat to Lloyd's to cut all business ties with the NRA and other gun-promotion groups"—are much stronger than those in *Okwedy*. *Vullo II*, 602 U.S. at 195.

In *Rattner*, the Second Circuit found that a letter from a village administrator (Netburn) raising "significant questions and concerns" about an advertisement placed in a Chamber of Commerce newsletter violated the First Amendment. 930 F.2d at 206. The letter was printed on Netburn's personal stationery. *Id*. at 205. In it, Netburn raised concerns on behalf of "[m]yself and my neighbors" about the advertisement, expressing his belief that the advertisement "was and is inappropriate and a disservice to those of us who live here and have been strong supporters of our local businesses." *Id*. at 206. Netburn threatened no reprisals, stating only that he "believe[d] that

each citizen of Pleasantville deserves and expects answers to" the questions he raised. *Id*. Netburn had no authority to impose any civil or criminal sanctions on the Chamber of Commerce, and neither he nor the village took any further action. *Id*. at 209–10.

Despite Netburn's total lack of regulatory authority and the absence of any direct threat or follow-up action, the Second Circuit found that Netburn's letter violated the First Amendment. It did so based on testimony from Chamber of Commerce witnesses stating that they perceived the letter as threatening, and the fact that the Chamber stopped publishing its newsletter shortly after receiving Netburn's letter. *Id*. at 210. In holding as such, the Second Circuit rejected the district court's determination that "[i]n the absence of language intimating legal reprisal, the plaintiff 's claim of governmental coercion must fall." Id. at 209

Thus, going beyond *Bantam Books*, prior Second Circuit case law clearly established that "a public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form." *Okwedy*, 333 F.3d at 344.

Because the Supreme Court held that this case falls squarely within the rule established by *Bantam Books*, *Okwedy*, and *Rattner*, qualified immunity cannot shield Vullo.

## II. The Supreme Court's *Vullo* Decision Undermined This Court's Qualified Immunity Holding in Rejecting Its Merits Holding.

The Supreme Court's opinion in *Vullo* thoroughly undermined this Court's prior ruling as to qualified immunity. The Supreme Court concluded that this Court erroneously found no First Amendment violation only by "taking the allegations in isolation and failing to draw reasonable inferences in the NRA's favor." *Vullo II*, 602 U.S. at 194–95. This Court's qualified immunity holding is infected by the same error. Once that error is corrected, there can be no question that what the complaint alleges constitutes a violation of clearly established law.

By reading the complaint as involving only isolated instances of "permissible government speech" and the execution of Vullo's "regulatory responsibilities," this Court failed to recognize what all nine Justices of the Supreme Court recognized: that the complaint's allegations state a First Amendment violation under clearly established law going back at least 60 years to *Bantam Books*. *See Vullo I*, 49 F.4th at 719 & n. 15. This Court's assessment of the merits missed the bigger picture, adopting inferences in favor of Vullo—and against the NRA—regarding Vullo's backroom threats, Guidance Letters, and overreaching consent decrees. *See Vullo II*, 602 U.S. at 194–95.

Indeed, this Court's previous qualified immunity holding was derivative of its merits analysis. In particular, this Court concluded that qualified immunity was proper because "the Guidance Letters and Press Release . . . use only suggestive language and rely on the power of persuasion," *Vullo I*, 49 F.4th at 720, and that no case precludes "law enforcement from . . . offer[ing] leniency in exchange for help advancing their policy goals," *id*. at 721.

DALLAS | NEW YORK

BREWER
ATTORNEYS & COUNSELORS

The Supreme Court's reasoning rejects this Court's prior analysis. First, the Supreme Court faults this Court for neglecting its "obligation to draw reasonable inferences in the NRA's favor and consider the allegations as a whole." *Vullo II*, 602 U.S. at 195. It did not, however, leave that task for remand but declared that "the complaint, assessed as a whole, plausibly alleges that Vullo threatened to wield her power against those refusing to aid her campaign to punish the NRA's gun-promotion advocacy." *Id*. at 194. That is part of *Vullo II*'s clear holding; it is binding on this Court, and it is dispositive of qualified immunity.

*Vullo II* also rejects this Court's specific grounds for extending qualified immunity. On the guidance letters and press releases, the Supreme Court agreed that "Vullo was free to criticize the NRA and pursue the conceded violations of New York insurance law," *id*. at 187, but disagreed that that was what occurred here. Instead, it concluded that this Court "failed to analyze the Guidance Letters and press release against the backdrop of other allegations in the complaint, including the Lloyd's meeting." *Id.* at 195. And it concluded that "offer of leniency" was not a proper law enforcement tactic, but an improper, "not-so-subtle, sanctions-backed threat." *Id.*

This Court previously reasoned that "the various cases addressing the issue did not provide clear and particularized guidance but involved very different circumstances and much stronger conduct." *Vullo I,* 49 F.4th at 719 & n. 15. Here again, the Supreme Court unequivocally disagreed, concluding that it need make no new law whatsoever to find a First Amendment violation on the allegations in the NRA's complaint. *Vullo II*, 602 U.S. at 197 ("The Court does not break new ground in deciding this case" but "only reaffirms the general principle from Bantam Books that where, as here, the complaint plausibly alleges coercive threats aimed at punishing or suppressing disfavored speech, the plaintiff states a First Amendment claim.").

If a unanimous Supreme Court opinion expressly stating that it need make no new law to hold that a complaint alleges a First Amendment violation is not sufficient to defeat qualified immunity at the pleading stage, then nothing is. The Supreme Court could hardly have been clearer in its decision. This Court should accordingly reverse its prior holding and recognize that it was clearly established that government officials cannot use their regulatory authority to coerce others to punish speakers with whom the officials disagree.

Moreover, the Supreme Court found that this Court's prior opinion in *Vullo II* failed to properly apply the well-established pleading standard of *Iqbal* and *Twombly*. Indeed, this Court "could only" have found that the NRA failed to state a First Amendment claim under *Bantam Books* "by taking the allegations in isolation and failing to draw reasonable inferences in the NRA's favor in violation of this Court's precedents." *Vullo II*, 602 U.S. at 194–95 (citing *Iqbal*, 556 U.S. at 678–79, *Bell Atl. Corp.*, 550 U.S. at 570). Crucially, this Court "failed to analyze the Guidance Letters and press release against the backdrop of other allegations in the complaint, including the Lloyd's meeting." *Id*. at 195. *Vullo II* also failed to account for the fact that "the complaint alleges that Vullo made a not-so-subtle, sanctions-backed threat to Lloyd's to cut all business ties with the NRA and other gun-promotion groups, although there was no sign that other gun groups also had unlawful insurance policies." *Id*. "It is also relevant that Vullo made this

7

1717 Main Street, Suite 5900 • Dallas, Texas 75201 • 214.653.4000 • f: 214.653.1015 • Brewerattorneys.com

alleged threat in a meeting where she presented her 'desire to leverage [her] powers to combat the availability of firearms, including specifically by weakening the NRA.'" *Id*.

In sum, "[g]iven the obligation to draw reasonable inferences in the NRA's favor and consider the allegations as a whole, the Second Circuit erred in reading the complaint as involving only individual instances of 'permissible government speech' and the execution of Vullo's 'regulatory responsibilities.'" *Id*. (quoting *Vullo I*, 49 F.4th at 717–19). "For the same reasons, this Court cannot simply credit Vullo's assertion that 'pursuing conceded violations of the law,' is an 'obvious alternative explanation' for her actions that defeats the plausibility of any coercive threat raising First Amendment concerns." *Id*. (citing *Iqbal*, 556 U.S. at 682). This was because "[a]t this stage . . . the Court must assume the well-pleaded allegations as true." *Id*.

### III.     Vullo's Claim for Qualified Immunity Is, at Best, Premature

Indeed, the fact that this case remains at the pleading stage further underscores the impropriety of finding qualified immunity here. "[Q]ualified immunity is often best decided on a motion for summary judgment." *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) (deferring ruling on qualified immunity to permit the development of a factual record sufficient to assess scope and clarity of the asserted rights violations); *see also Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813–14 (2d Cir. 2013). This Court previously noted that, in most cases, the defense of qualified immunity should not be decided at the pleadings stage. *Vullo I*, 49 F.4th at 714. In this case, this means that this Court should remand the case to the District Court so that discovery can be taken, and motions for summary judgment can be filed and considered.

Qualified immunity often "depends very much on the facts of the case." *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004). Given the limited information available on a motion to dismiss, a qualified immunity defense presented at this stage "faces a formidable hurdle . . . and is usually not successful." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). "Put another way, advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Id*. (holding plaintiff's allegations sufficient to overcome defendants' assertion of qualified immunity defense "at least until further facts are submitted on a motion for summary judgment or at trial"); *see also Steele-Warrick v. Finnegan*, Nos. 23-743, 23-766, 23-767, 2024 WL 2837618, at *1 (2d Cir. June 5, 2024) (declining to find qualified immunity at the motion to dismiss stage where case involved "complex factual questions, apparently intertwined with the legal ones").

Applying these precedents, courts in this Circuit consistently defer ruling on qualified immunity to allow the development of a factual record. *See, e.g.*, *Vasquez v. Maloney*, 990 F.3d 232, 235 (2d Cir. 2021); *Myers v. Patterson*, 819 F.3d 625, 635 (2d Cir. 2016) (Calabresi, J.) (concluding "absence of crucial facts" as to whether official acted reasonably precluded court from granting official qualified immunity until "a more substantive record," noting that "development of those facts may well protect [official] from trial and from liability for [plaintiff's] alleged civil rights violations"). That is because, in many instances, discovery is needed to resolve disputed

issues of fact bearing on qualified immunity. *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (clarifying discovery may be necessary to address the qualified immunity question); *see also Crawford-El v. Britton*, 523 U.S. 574, 598–601 (1998) (recognizing discovery as to facts defendant had in his possession at time of alleged constitutional violation may be required before the qualified immunity issue can be resolved).

At the pleading stage, all allegations must be accepted as true and all reasonable inferences drawn in the NRA's favor. *Vullo II*, 602 U.S. at 194–95. On the pleadings, the Supreme Court's decision makes clear that only one conclusion is permissible: the complaint alleges a First Amendment violation under long established law. *Id*. The inquiry may differ after discovery is complete. As the Court noted, "[o]f course, discovery in this case might show that the allegations of coercion are false, or that certain actions should be understood differently in light of newly disclosed evidence. at this stage, though, the Court *must* assume the well-pleaded factual allegations in the complaint are true." *Id.* (emphasis added).

Indeed, the district court here pointed to several issues of material fact precluding dismissal based on Vullo's purported qualified immunity. *Nat'l Rifle Ass'n of Am. v. Cuomo*, 525 F. Supp. 3d 382, 403 (N.D.N.Y. 2021). For example, "a question of material fact exists as to whether Ms. Vullo explicitly threatened Lloyd's with DFS enforcement if the entity did not disassociate with the NRA." *Id*. Thus, the district court found that "even assuming an objectively reasonable person would not have known that the Guidance Letters or Ms. Vullo's statements in the Cuomo Press Release could be construed as implied threats to regulated entities if they did not disassociate with the NRA, qualified immunity on the First Amendment claims must be denied at this time." *Id*. This Court, too, should allow the record to develop on remand so the lower court can reach a fully informed decision on qualified immunity.[2]

**IV.        Conclusion**

The NRA's Second Amended Complaint plausibly alleges that Vullo violated the NRA's clearly established First Amendment rights. For these reasons, and for the reasons set out in prior submissions, the Court should affirm the district court's denial of qualified immunity.

---

[2] The NRA notes that this appeal was a limited interlocutory appeal on qualified immunity only. The NRA continues to seek appropriate injunctive relief in the district court and reserves its right to appeal any adverse district court rulings with respect to injunctive relief in connection with final judgment.

Dated: July 29, 2024

Respectfully submitted,

*/s/ William A. Brewer III*

William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Sarah B. Rogers (Bar No. 700207)
sbr@brewerattorneys.com
Noah Peters (Bar No. 703969)
nbp@brewerattorneys.com
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

**ATTORNEYS FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA**

cc: All Counsel of Record (via ECF)