*Via* **ECF**
Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *NRA v. Vullo*, No. 21-636: *Amicus Curiae* Foundation for Individual Rights and Expression *amicus curiae* letter brief regarding Supreme Court decision, in support of Plaintiff-Appellee.

Dear Ms. Wolfe:

*Amicus Curiae* Foundation for Individual Rights and Expression (FIRE) submits this Supplemental Letter Brief pursuant to this Court's order directing the parties to address the impact of the Supreme Court's decision on whether Defendant-Appellant Vullo is protected by qualified immunity.[1]

The Supreme Court's decision confirms that Defendant Vullo violated clearly established law when she strong-armed regulated entities into severing ties with the National Rifle Association in an effort to suppress that organization's political message. "The Court d[id] not break new ground in deciding this case. It only reaffirm[ed] the general principle from *Bantam Books*," a case decided "[s]ix decades ago." *NRA v. Vullo*, 602 U.S. 175, 180, 197 (2024).

In doing so, the Supreme Court agreed with settled federal-court precedent both within the Second Circuit and from other circuits holding that "a government official cannot do indirectly what she is barred from doing directly." *Id.* at 190. This Court's prior decision was mistaken not because it differed on the law, but because it misapplied the law to the facts, applying the wrong pleading standard and ignoring factually analogous cases.

Principles of constitutional law rarely are more "clearly established" than this. Under the facts alleged, Vullo does not receive qualified immunity.

---

[1] No party or party's counsel authored this brief in whole or in part, and no person other than *amicus curiae*, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## I. A Right is Clearly Established When it is Apparent From Either Controlling or Persuasive Precedent That an Official's Conduct is Unconstitutional.

Qualified immunity does not shield government actors from personal liability where (1) the plaintiff sufficiently pleads a constitutional violation and (2) the constitutional right was "clearly established" at the time of the alleged violation. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Here, the Supreme Court held that the first threshold condition was met because the NRA's Complaint set forth a First Amendment violation. It alleged Vullo unconstitutionally coerced regulated entities to cut ties with the NRA for the purpose of suppressing the NRA's gun-promotion advocacy. *NRA*, 602 U.S. at 198.

As to the second condition, there can be no doubt the law was clearly established when the Complaint was filed. A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that" their conduct violated it. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The conduct at issue need not have been deemed unlawful in the past; it need only have been "apparent" to the official that their conduct was unlawful "in the light of pre-existing law." *Id.* Pre-existing law does not have to be *controlling* precedent. "Even in the absence of binding precedent, a right is clearly established if . . . other circuits clearly foreshadow a particular ruling on the issue." *Horn v. Stephenson*, 11 F.4th 163, 169 (2d Cir. 2021) (quotation marks omitted).

This case stands out because the Supreme Court, other Courts of Appeals, *and* this Court's prior decision all agree on the law, even using the same basic test. Where this Court's prior decision erred was in misapplying that law to the facts.

## II. This Court, the Supreme Court, and the Other Courts of Appeals Agree on the Law.

The Supreme Court's decision reaffirmed the First Amendment's prohibition of indirect censorship through intermediaries as established six decades ago in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). The applicable legal principles are sufficiently clear that this Court and other Courts of Appeals have recognized and developed it for decades. Although government officials may express their own points of view, they may not "use the power of the State to punish or suppress disfavored expression." *NRA*, 602 U.S. at 188 (citing *Rosenberger v. Univ. of Virginia*, 515 U.S. 819, 830 (1995)). The government may not engage in conduct that "could be reasonably understood to convey a threat of adverse government

action in order to punish or suppress the plaintiff's speech." *Id.* at 191 (citing *Bantam Books,* 372 U.S. at 67–68).

This Court explained in *Okwedy v. Molinari* that *Bantam Books* drew a line "between attempts to convince and attempts to coerce." 333 F.3d 339, 344 (2d Cir. 2003). Since then, "the Courts of Appeals have . . . considered similar factors to determine whether a challenged communication is reasonably understood to be a coercive threat." *NRA*, 602 U.S. at 189–90 (citing cases from the Third, Fifth, Seventh, Ninth, and *Second* Circuits). The Second Circuit has especially developed this caselaw. It has long held that *Bantam Books* forbids "comments of a government official . . . reasonably . . . interpreted as intimating . . . some form of punishment or adverse regulatory action will follow the failure to accede the official's request." *Hammerhead Enters. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983); *see also Rattner v. Netburn*, 930 F.2d 204, 208–10 (2d Cir. 1991); *Okwedy*, 333 F.3d at 342–43; *Zieper v. Metzinger*, 474 F.3d 60, 65–67 (2d Cir. 2007); *NRA*, 49 F.4th at 714–16.

From these cases, this Court *in this case* recognized a four-factor test to determine whether the government is making a coercive threat: the speaker's "(1) word choice and tone; (2) the existence of regulatory authority; (3) whether the speech was perceived as a threat; and . . . (4) whether the speech refers to adverse consequences." *NRA*, 49 F.4th at 715. This test was also adopted by the Fifth and Ninth Circuits, *Missouri v. Biden*, 83 F.4th 350, 378 (5th Cir. 2023), *rev'd on other grounds by Murthy v. Missouri*, 144 S.Ct. 1972 (2024); *Kennedy v. Warren*, 66 F.4th 1199, 1207, 1210–11 (9th Cir. 2023), with input from cases in the Third and Seventh Circuits, *see R. C. Maxwell Co. v. New Hope*, 735 F.2d 85, 88 (3d Cir. 1984); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230–32 (7th Cir. 2015).

Thus, both this Court and the other circuits—over decades—were able to develop and apply *Bantam Books* faithfully. This Court reached an incorrect result only by viewing the complaint's allegations myopically, applying the wrong pleading standards and ignoring cases with similar facts.

### III. This Court's Prior Decision Misapplied the Law by Misconstruing the Complaint and Ignoring Analogous Caselaw.

This Court misapplied the law in two ways: First, as the Supreme Court held, it did not apply the correct pleading standards when analyzing the complaint. And second, it did not properly analogize the facts of this case to other cases that used the same four-factor test.

This Court's prior decision misconstrued the complaint by "taking the allegations in isolation and failing to draw reasonable inferences in the NRA's favor." *NRA*, 602 U.S. at 194–95. By "fail[ing] to analyze the Guidance Letters and press release against the backdrop of other allegations in the complaint," *id.* at 95, this Court missed the big picture. Even if certain statements of Vullo's, on their own, were permissible government speech, the complaint alleged those statements were made in a certain context. *Id.* ("It is also relevant that Vullo made this alleged threat in a meeting where she presented her desire to leverage her powers to combat the availability of firearms, including specifically by weakening the NRA." (cleaned up)). This Court was wrong to ignore that context, and in doing so it violated Supreme Court precedent. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

This Court also ignored analogous caselaw. As noted, this Court was well aware of the controlling law in this area and the relevant four-part test. Yet it completely ignored pivotal cases in that line of precedent.

One such case is especially on-point. In *Backpage.com, LLC v. Dart*, 807 F.3d 229 (2015), the Seventh Circuit reaffirmed the principle that a government official violates the First Amendment when it coerces an intermediary through threats of some legal action for the purpose of suppressing speech. There, a local sheriff demanded that large credit firms Visa and Mastercard "prohibit the use of their credit cards to purchase any ads on Backpage" by sending them official cease and desist letters and engaging in follow-up contacts with the firms. *Id.* at 230–32. In deciding that the sheriff's conduct violated clearly established First Amendment law, the Seventh Circuit relied on one of this Court's decisions to identify unconstitutional government coercion. *Id.* at 230–31 (citing *Okwedy*, 333 F.3d at 342–44). The court held the sheriff's conduct crossed the line into unlawful coercion because "[h]e didn't educate them about the nature and possible consequences of advertising for sex; he told them to desist or else." *Dart*, 807 F.3d at 237.

Vullo, like the sheriff in *Dart*, both informed regulated entities about the possible consequences of their actions and demanded that they cease those actions. The Guidance Letters and Press Release contained references to the reputational consequences of maintaining ties with the NRA, while the private meetings essentially told Lloyd's that they *must* cut ties with the NRA or face liability for unrelated infractions that DFS otherwise would not pursue. *NRA*, 602 U.S. at 183. Vullo's public and private communications never used words like "demand" or "compel," but she did not need such language to run afoul of *Bantam Books*. Even "more temperate" language is sufficient, as the Seventh Circuit confirmed in *Dart*, 807 F.3d at 233, and as this Court made clear in *Okwedy*, 333 F.3d at 344 (implicit

threat is enough). Vullo's alleged conduct in this case was perhaps *even more* coercive than the sheriff's in *Dart*, or the Borough President's in *Okwedy*, because Vullo had more regulatory authority. "Generally speaking, the greater and more direct the government official's authority, the less likely a person will feel free to disregard a directive from the official." *NRA*, 602 U.S. at 191–92. The regulated entities were understandably "persuaded" by Vullo's threats.

## Conclusion

Applying this Court's four-part test faithfully, informed by cases like *Dart* and *Okwedy*, this Court should hold that Vullo was not protected by qualified immunity. The determinative question is whether Vullo's conduct, in context and drawing reasonable inferences in favor of the NRA, violated *Bantam Books*. No one familiar with *Bantam Books* and numerous circuit court cases applying it over the decades would think it appropriate to threaten regulated entities with enforcement actions if they did not cut ties with a disfavored speaker.

Under *Bantam Books*, government officials cannot avoid constitutional limits by acting indirectly—threatening intermediaries or business partners in order to silence disfavored speech. Yet a decision granting Vullo immunity would telegraph just how officials can avoid constitutional limits by slightly modifying or softening their coercive statements. This Court should instead uphold clearly established law. No reasonable government official reading *Bantam Books*, or any other in this line of cases, would understand the law as condoning Vullo's behavior.

Dated August 8, 2024.

Respectfully submitted,

/s/ Robert Corn-Revere
Robert Corn-Revere
Joshua A. House
FOUNDATION FOR INDIVIDUAL RIGHTS
 AND EXPRESSION
700 Pennsylvania Ave., Suite 304
Washington, D.C. 20003
Tel: (215) 717-3473
bob.corn-revere@thefire.org

*Counsel for Amicus Foundation for Individual Rights and Expression*

## Certificate of Compliance

1. This document complies with the type-volume limits of this Court's July 8, 2024 Order (Doc. 135) and Fed. R. App. P. 29(a)(5) because this document contains 1,915 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

cc: All Counsel of Record (via ECF)